IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAROL SUE GOODHAND, | : |
| Plaintiff, | : |
| v. | : C.A. No. 14-132-LPS |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security | : |
| Defendant. | : |

Sommer L. Ross, DUANE MORRIS LLP, Wilmington, DE

Eddy Pierre Pierre, Law Offices of Harry J. Binder and Charles E. Binder, New York, NY.

    Attorneys for Plaintiff.


Charles M. Oberly, III, United States Attorney, and Dina W. Griffin, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, DE.

Nora Koch, Acting Regional Chief Counsel, and Theresa A. Casey, Assistant Regional Counsel, SOCIAL SECURITY ADMINISTRATION-REGION III, OFFICE OF GENERAL COUNSEL, Philadelphia, PA.

    Attorneys for Defendant.

**MEMORANDUM OPINION**

March 25, 2015
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Carol Sue Goodhand ("Goodhand" or "Plaintiff") appeals from a decision of Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration ("Commissioner" or "Defendant"), denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by Plaintiff and the Commissioner. (D.I. 12; D.I. 14) Plaintiff asks the Court to reverse and remand the Commissioner's decision. (D.I. 13 at 15-16) The Commissioner requests that the Court affirm her decision denying Plaintiff's application for benefits. (D.I. 15 at 14) For the reasons set forth below, the Court will grant the Commissioner's motion and deny Plaintiff's motion.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed her claim for DIB on November 13, 2009, alleging disability since March 18, 2004. (D.I. 8 (hereinafter, collectively with D.I. 9, "Tr.") at 30) Her application was denied at the pre-hearing levels. (*Id.*) She appeared before an Administrative Law Judge ("ALJ") on February 23, 2012 and, on April 3, 2012, the ALJ issued a decision unfavorable to Plaintiff. (*Id.* at 30-37) The Appeals Council denied Plaintiff's request for review on August 16, 2013. (*Id.* at 4-6) Thus, the April 3, 2012 decision by the ALJ became the final decision of the Commissioner. *See* 20 CFR §§ 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 107 (2000). On January 6, 2014, the Appeals Council granted Plaintiff's request for an extension of time to file a

1

civil action. (Tr. at 1-3)

On February 4, 2014, Plaintiff filed a Complaint seeking judicial review of the ALJ's April 3, 2012 decision. (D.I. 1) Subsequently, on May 29, 2014, Plaintiff moved for summary judgment. (D.I. 12) On June 30, 2014, the Commissioner filed a cross-motion for summary judgment. (D.I. 14)

### B. Factual Background

#### 1. Plaintiff's Medical History, Treatment, and Conditions

Goodhand was forty-nine (49) years old when she applied for DIB on November 13, 2009 (Tr. at 30) She earned an associate's degree in architectural engineering. (Tr. at 62) She is married and has two children. (Tr. at 63-64) She worked as an estimator from 1981 until 1993, and worked as a building official from 1995 until 1999. (Tr. at 179) Goodhand alleges that she has been disabled since March 18, 2004, prior to her date last insured of December 31, 2004. (Tr. at 32) She asserts that her disability arises from abdominal pain and multiple daily episodes of diarrhea which arose after treatment for symptoms related to stage II colon cancer. (Tr. at 1322-24, 29)

Goodhand was primarily treated for her medical conditions by Dr. Semaan Abboud (Tr. at 182) and Judy Howett, RN, MSN, FNP, a nurse practitioner (Tr. at 183). Other doctors participating in Goodhand's care included Dr. Khan, Dr. Guarino (Tr. at 801-04), and Dr. Lodhavia, a gastroenterologist (Tr. at 788-89). In addition to evidence from these treating physicians, the record includes a physical residual functional capacity ("RFC") assessment performed by a non-treating practitioner, Dr. Vinod Kataria. (Tr. at 1284-90)

In February 2004, Goodhand underwent a colonoscopy after complaining of stool changes

2

and abdominal pain. (Tr. at 240) The colonoscopy revealed a mass in the right cecum, which led to Goodhand undergoing a right hemicolectomy. (Tr. at 240) Goodhand was found to have stage II colon cancer, without signs of malignancy, and it was recommended that she follow up for repeated colonoscopies and CEA antigen every six months. (Tr. at 240) Following the procedure, only post-surgical changes were found, with no obstructions. (Tr. at 254)

Following the surgery, Goodhand reported continued abdominal pain and rectal bleeding. (Tr. at 34) Examinations demonstrated abdominal tenderness. (Tr. at 228, 231) A colonoscopy revealed rectal bleeding from the site of surgery. (Tr. at 38-39) However, a gastric empty study found normal results in July 2004. (Tr. at 781) Likewise, biopsies in July and September 2004 showed only mild inflammation. (Tr. at 487, 776, 1152) In March 2005, Dr. Lodhavia, a gastroenterologist, investigated Goodhand's residual symptoms, abdominal pain and chronic diarrhea, and opined that it might be due to irritable bowel syndrome. (Tr. at 788)

Goodhand asserts that the diarrhea has prevented her from engaging in any form of gainful work since March 2004. She asserts that she cannot sit for more than 20-30 minutes and cannot stand for more than every 10-20 minutes due to her pain. (Tr. at 167) She also asserts that she is unable to sleep because, every hour to 90 minutes, she has to go to the bathroom for approximately half an hour. (Tr. at 168) She alleges that, when she has to leave the house on any occasion, she does not eat the day before because of her diarrhea. (Tr. at 168) Judy Howett, a nurse practitioner who had seen Goodhand since March 1, 2004, believed that Goodhand would be unable to work an eight hour day due to "multiple (15-20) daily episodes of diarrhea." (Tr. at 701) Howett submitted a "Multiple Impairment Questionnaire" evaluation form in which she stated that she believed Goodhand could sit eight hours a day and stand or walk eight hours a

3

day, but that Goodhand would have to take frequent bathroom breaks. (Tr. at 1324) Dr. Abboud also submitted an opinion that Goodhand can sit and stand/walk for eight hours, but will need frequent bathroom breaks for the chronic diarrhea. (Tr. at 1410)

## 2. The Administrative Hearing

Goodhand's administrative hearing took place in Dover, Delaware on February 23, 2012, before an ALJ, in the presence of counsel and vocational expert ("VE") Simms. (Tr. at 43)

### a. Plaintiff's testimony

Goodhand testified that she stopped working in 2004 due to her surgery, and due to the fact that she had to go to the bathroom "all the time[]" after the surgery. (Tr. at 46) She explained that she continued to experience abdominal pain both before and after her surgery in 2004. (Tr. at 47) She had chronic diarrhea for three months prior to her surgery, and it got worse after the surgery, as she then had to use the bathroom from 10 to 20 times a day. (Tr. at 48) She explained that eating would influence the frequency of her diarrhea, so much so that if she had to travel, she would not eat meals the day before. (Tr. at 48-49) When she did not eat, she only needed to use the bathroom five times a day. (Tr. at 49) She explained that sometimes she gets warnings that she needs to use the restroom, but sometimes she does not. (Tr. at 49) She said that each time she used the bathroom she would be in the bathroom for between 15 and 20 minutes (Tr. at 49)

Goodhand also explained that she has had gastroesophageal reflux disease (GERD) since 2004, which causes heartburn, nausea, and vomiting. (Tr. at 51) Goodhand takes Ambien in order to sleep so that through the night she only has to use the bathroom every three to four hours, as opposed to having to use the bathroom every hour before she used Ambien. (Tr. at 54-

4

55) She occasionally wears a pad or a diaper for her diarrhea. (Tr. at 55) She testified that she does not leave the house unless she is going to see a doctor or if she needs to be somewhere specific. (Tr. at 55)

Goodhand explained that she worked as a home inspector after 2004, and that during this employment, she would use the bathroom in the units she inspected even though she was not supposed to do so. (Tr. at 58) This job was once a week, on Saturdays, for four to nine hours. (Tr. at 58-59) She testified that on Sundays after working, she was "miserable" due to pain and that she could not eat the day before or that day. (Tr. at 59) She also testified that she was on the planning zoning commission for the town of Ocean View and that, although she was able to hear cases, she had to get up during meetings to go to the bathroom. (Tr. at 60)

### b. Vocational Expert's testimony

An independent VE also testified at the hearing. (Tr. at 72-78) The VE testified that an individual with Goodhand's characteristics would be able to perform a bench work position, such as a packer or stuffer, assembler, or final assembler, which would have flexibility to sit or stand. (Tr. at 73-74) The VE explained that in the region, there were approximately 275 jobs as a packer or stuffer, 175 as an assembler, and 275 as a final assembler. (Tr. at 75) In the national economy, the VE testified that there were 120,000 jobs as a packer or stuffer, 125,000 as an assembler, and 250,000 as a final assembler. (Tr. at 75) When asked about "ready access to a bathroom," the VE was unable to say if a bathroom would be within 25 feet, but only that there would be access for a bathroom. (Tr. at 76-77) The VE, when asked about tolerances for the restroom, explained that a person would need to be productive at least 80 percent of the time, and that if a person had to go back and forth to the bathroom so much that their productivity would be

5

less than 80 percent, it would not be consistent with competitive employment. (Tr. at 77) The VE was asked about a person who would need to use the restroom at least once an hour for a period of 10 minutes, and testified that this "would not necessarily be consistent with competitive employment[]" because it might reduce productivity to less than 80 percent. (Tr. at 77-78) Likewise, the VE, when asked about an individual who would be absent three or more days a month on a consistent basis, explained that it would "not be consistent with competitive employment." (Tr. at 78)

### 3. The ALJ's Findings

The ALJ concluded that the Plaintiff's medical conditions were not disabling. In reaching this conclusion, the ALJ first considered the nature and severity of Goodhand's physical impairments. (Tr. at 32-33) The ALJ determined that Goodhand's irritable bowel syndrome status-post hemicolectomy was a severe impairment, but that the gastroesophageal reflux disease was a non-severe impairment. (Tr. at 32)

With respect to Plaintiff's irritable bowel syndrome status, the ALJ found that although the Plaintiff's impairment was subjectively severe, there was insufficient objective evidence to meet the requirements of a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. In particular, the ALJ explained that the impairments failed to meet the requirements of Listings 5.02 and 5.06, which were especially considered. (Tr. at 33) The ALJ explained that the impairments failed to meet any of the listing 5.00 criteria because the record indicated that Goodhand had only minimal to moderate bowel inflammation and hemorrhaging. (Tr. at 33 (citing Tr. at 487, 774, 776))

The ALJ, further found that Goodhand had:

> the residual functional capacity to perform sedentary work as

6

> defined in 20 CFR 404.1567(a) except she can lift ten pounds
> occasionally, lesser weights frequently, and can stand and sit for
> fifty minutes at a time for eight hours a day, five days a week. She
> should avoid heights and hazardous machinery. She also requires
> ready access to a restroom. Due to her pain and discomfort, the
> claimant would also be limited to simple, routine, unskilled work
> involving low stress, as defined as requiring low amounts of
> concentration and memory; not involving production rates or work
> involving more than two-step tasks; and involving no judgment,
> decision making, or workplace changes.

(Tr. at 33)

The ALJ reported Plaintiff's allegations of disability: that she was "under constant stomach, back, and joint pain that restricted her movements and prevented her from sitting or standing for extended periods," "she had to go to the restroom every half hour for half an hour each time," and "she has had many difficulties with her activities of daily living, mostly because of her pain and restroom requirements." (Tr. at 33) The ALJ also explained that Goodhand "stated that she is also unable to leave the house due to her need to be in close proximity to a restroom." (Tr. at 34)

The ALJ explained that although Goodhand's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, . . . [Goodhand's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." (Tr. at 34) The ALJ explained that the objective testing in July 2004 showed improvement, undermining Goodhand's alleged symptoms. (Tr. at 34) The ALJ also explained that Plaintiff's credibility "is damaged due to her timeliness of filing . . . five years after her alleged onset date." (Tr. at 34) The ALJ stated that "[t]his does not corroborate the alleged sense of urgency and severity of her

7

condition . . . [and] objective medical findings could not determine the cause of her subsequent symptoms, nor could it support her reported continual diarrhea and pain." (Tr. at 34-35) The ALJ also found that these allegations were contradicted by Goodhand's description of daily activities, which indicated that "she is capable of virtually all aspects of personal care" and other activities. (Tr. at 35)

The ALJ gave little weight to the opinion of Judy Howett. (Tr. at 35) Specifically, the ALJ discounted Howett's opinion that Goodhand would miss more than three days of work per month, and would have constant interference to her attention and concentration due to her discomfort. (Tr. at 35) The ALJ explained that without corroborating objective evidence, it "appear[ed] that Ms. Howett's opinion is based primarily upon [Goodhand's] subjective allegations." (Tr. at 35) The ALJ did, however, agree that Goodhand would require ready access to a restroom. (Tr. at 35)

The ALJ gave moderate weight to the opinion of Dr. Vinod Kataria, a state agency medical consultant. (Tr. at 35) Dr. Kataria "found that the claimant was capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, standing and/or walking for two hours in an eight-hour day, sitting for six hours in an eight-hour day, and performing postural activities frequently." (Tr. at 35) The ALJ gave this moderate weight because "the record indicates that [Goodhand] has the additional restrictions of ready access to a restroom and positional changes." (Tr. at 35) In sum, the ALJ concluded that Dr. Kataria's RFC assessment was "supported by the lack of objective medical evidence in support of [Goodhand's] alleged severity, as well as by [Goodhand's] reported activities of daily living that are contradictory to her allegations. According to the objective evidence, [Goodhand's] impairments are not as

8

severe as alleged." (Tr. at 35)

The ALJ determined that through the date last insured, Goodhand was unable to perform her past relevant work. (Tr. at 35-56) The ALJ accepted the VE's testimony that the demands of Goodhand's past work would exceed Goodhand's RFC. (Tr. at 35-36) The ALJ explained that Goodhand was a younger individual, age 18-44, on the date of last insured, and that she had at least a high school education. (Tr. at 36) The ALJ also determined that transferability of job skills is not material to determination of disability. (Tr. at 36)

Finally, the ALJ concluded that, considering Goodhand's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed. (Tr. at 36) The ALJ found that Goodhand was capable of performing the jobs of assembler, final assembler, or packer, as the VE testified. (Tr. at 36-37) Because the ALJ found that Goodhand was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy," Goodhand was not disabled from March 18, 2004 through December 31, 2004. (Tr. at 37)

## III. LEGAL STANDARDS

### A. Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining the appropriateness of summary judgment, the Court must "review the record taken as a whole . . . draw[ing] all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (internal quotation marks

9

omitted). If the Court is able to determine that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005).

### B. Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

10

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1983). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 239 F.3d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). A "disability" is defined for purposes of DIB as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§

11

423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel,* 186 F.3d 422, 427–28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer,* 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R.

12

§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past relevant work); *Plummer,* 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter,* 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer,* 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer,* 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer,* 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a VE. *See id.*

### B. Plaintiff's Argument on Appeal

Goodhand presents two related arguments in her appeal of the ALJ's step five determinations. She argues that the ALJ erred by (1) failing to properly evaluate the medical evidence presented (D.I. 13 at 9-13); and (2) failing to properly evaluate Plaintiff's subjective complaints (*id.* at 13-15).

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord

13

treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotation marks and citations omitted). "Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Id.* (internal quotation marks and citation omitted). "The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Id.* "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* at 317-18 (internal quotation marks and citations omitted).

The ALJ rejected portions of Howett's opinion and accorded it little weight because of a lack of corroborating objective evidence, and because objective medical findings could not support the severity of Goodhand's reported diarrhea and pain, in addition to the fact that the ALJ disbelieved Goodhand. (Tr. at 35) The ALJ relied on objective testing which showed that Goodhand's colon was normal. These documents discuss that Goodhand claimed to have diarrhea, but that the doctors could not find a clear cause, as all tests showed that Goodhand was normal. (Tr. at 794, 809)

The ALJ's conclusion, that the severity of the diarrhea could not supported by the objective medical findings, is supported by substantial evidence in the record before the ALJ. *See Brown*, 845 F.2d at 1213. Likewise, the ALJ's conclusion that Howett's opinion was based

14

on Goodhand's subjective allegations is supported by substantial evidence given the lack of objective evidence supporting the severity alleged by Goodhand and the treating physicians' failure to find a cause for her diarrhea. Indeed, the only portion of Howett's opinions that was rejected related not to the existence of the diarrhea alleged by Goodhand, but to its severity, namely that Goodhand would "miss more than three days of work per month" and "would have constant interference to her attention and concentration due to her discomfort." (Tr. at 35) The ALJ "[did] agree . . . that [Goodhand] requires ready access to a restroom" in accordance with Howett's opinion. (Tr. at 35) The ALJ thus did not reject Howett or Abboud's opinions as a whole, but simply rejected those portions that the ALJ found were unsupported by any objective evidence or medical testing. Given this record, the ALJ was permitted to reject the treating physician's opinion. *See Morales*, 225 F.3d at 317-18.

The Court also cannot find error in the ALJ's assessment of Goodhand's own testimony. Substantial evidence supports the ALJ's finding that Plaintiff's subjective complaints were not fully credible. "Although any statements of the individual concerning his or her symptoms must be carefully considered, . . . the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 363 (3d Cir. 2011). The ALJ found that Goodhand's activities of daily living diminished the credibility of her allegations about the severity of symptoms, noting that Goodhand "stated that she is capable of virtually all aspects of personal care, preparing simple meals, cleaning the house, doing the laundry, mowing the grass, driving a car, shopping for groceries, maintaining personal finances, reading, watching television, visiting with her neighbors, and attending her daughter's school events." (Tr. at 35 (citing Tr. at 168-72)) An ALJ is permitted to evaluate the extent to which a claimant is accurately stating the degree of

15

pain or the extent to which he or she is disabled by pain. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999). The ALJ's determination that Goodhand's allegations were inconsistent with the objective medical evidence of record and Goodhand's own description of her daily activities is supported by substantial evidence. *See id.* ("[T]he ALJ thought that Hartranft's testimony about the extent of his pain was exaggerated, and that Hartranft could perform light duty work despite his complaints of incapacitating pain. That ruling is clearly supported by substantial evidence in this record. The ALJ cited specific instances where Hartranft's complaints about pain and other subjective symptoms were inconsistent with . . . the objective medical evidence of record . . . and . . . Hartranft's own description of his daily activities."). In assessing Plaintiff's credibility, the ALJ was also entitled to place weight on the fact that Plaintiff waited five years after she began suffering allegedly disabling pain and limitations before she filed her disability claim. (*See* Tr. at 34) Given the record, the Court concludes that it must defer to the credibility determination made by the ALJ. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) ("We . . . ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor."); *see also Gonzalez*, 537 F. Supp.2d at 657 ("Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence.") (internal quotation marks omitted).

Based on the ALJ's findings of Goodhand's credibility, and the rejection of portions of Howett's opinion as inconsistent with the objective medical evidence, the ALJ's determination of Goodhand's RFC and ability to perform other work was supported by substantial evidence. The VE testified that there were jobs that existed in the national economy that Goodhand could have performed based on the RFC determined by the ALJ. (Tr. at 73-76) Goodhand has not argued

that this testimony was improper, but merely argued that the assumptions upon which it was based were incorrect, and that instead that, if her allegations about her injury were taken as true, that she could not perform other work that existed in the national economy. (*See* Tr. at 77-78)

In sum, applying the appropriate, deferential standard of review, the Court cannot conclude that the challenged determinations of the ALJ are not supported by substantial evidence. Accordingly, the Court must affirm the ALJ's decision that Goodhand was not disabled.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment. An appropriate Order follows.